The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before, at and after the hearing as:
STIPULATIONS
1. The terms of the stipulations as set forth in the "Order on Final Pre-Trial Conference" which was entered on May 23, 1990 are incorporated by reference. The stipulations included in the "Order on Final Pre-Trial Conference" indicate that the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, that the employee-employer relationship existed between the plaintiff and the defendant employer, and that Commercial Union Insurance Company was the compensation carrier on the risk.
2. The Forms 18 and 33 which were filed with the Industrial Commission by plaintiff and marked as Stipulated Exhibit #1 are allowed into evidence.
3. On July 5, 1990 the parties deposed Dr. Kapil Rawal, a neurologist. The transcript of the deposition has been received for the record. Attached to the transcript as Defendants' Exhibit #1 is a progress note. All objections made at the deposition are overruled.
4. On August 31, 1990 the parties deposed Dr. Robert J. Starkenburg, a specialist in internal medicine. The transcript of the deposition has been received for the record. Attached to the transcript as Defendants' Exhibits #1-4 are medical notes, reports and records. Attached to the transcript as Plaintiff's Exhibit #1 are patient records. All objections made at the deposition are overruled.
5. On November 8, 1990, the parties deposed Dr. George Brothers, a rheumatologist. The transcript of the deposition has been received for the record. No exhibits are attached to the transcript. All objections made at the deposition are overruled.
6. On December 10, 1990, the parties deposed Susan Kathryn Adams, a vocational rehabilitation specialist. The transcript of the deposition has been received for the record. Attached to the transcript as Plaintiff's Exhibit #1 is a rehabilitation program prepared by Ms. Adams.
7. On January 25, 1991, the parties deposed Dr. Lillian R. Horne, a family practice specialist. The transcript of the deposition has been received for the record. Attached to the transcript are Defendants' Exhibit #1 and Exhibit A, an affidavit and progress notes. All objections made at the deposition are overruled.
* * * * * * * * * * *
In accordance with the Court of Appeals Opinion and based on all the competent evidence of record, the Full Commission finds as fact the following
FINDINGS OF FACT
1. Plaintiff's job was installing residential heating and air conditioning duct work and other equipment in the "rough in" stages of construction. Prior to going to work for defendant Metro, plaintiff performed heating and air conditioning work for a period of approximately three years for another employer, Weathermaster. Plaintiff again worked for Weathermaster after leaving defendants' employ. However, plaintiff, without explanation, did not divulge this employment at Weathermaster in his answers to defendants' interrogatories.
2. The work performed by plaintiff before, during and after his employment at Metro was similar in that his jobs at both employers, Metro and Weathermaster, involved the installation of heating and air conditioning work.
3. Plaintiff worked for Metro less than four (4) months, from February 1, 1988 until May 20, 1988. He was terminated May 20, 1988 when he declined to accept a reduction in his hourly wage offered by the employer because of low productivity.
4. Plaintiff's job duties included frequently cutting metal duct work with spring actions "snips" which he used, usually in his right hand, as much as four or five days a week. The snips are heavier than pliers made of steel and require a strong squeezing action to operate.
5. Plaintiff also was required in his job to frequently lift and install over his head piping, duct work, range hoods and venting.
6. For a period of at least two years immediately preceding plaintiff's work at Metro, plaintiff had suffered bilateral shoulder pain, which he reported to Dr. Horne, Dr. Starkenburg and Ms. Adams. Further, he had sustained an increase in shoulder pain in mid-January 1988 just prior to commencing any work activity with Metro in February. Plaintiff also reported a history of tendonitis and bursitis in his shoulders to Dr. Brothers and indicated that the same had existed for at least two years prior to his work at Metro. All of these complaints pre-existed plaintiff's employment at Metro and continued thereafter.
7. On plaintiff's first day on the job at Metro, he worked with Layout Supervisor Steve Loflin. Loflin was assigned as plaintiff's field supervisor, and was to observe and evaluate plaintiff during his 90-day probationary period, and to assist in training him in Metro's procedures. Loflin worked closely with plaintiff for several weeks during the first half of plaintiff's tenure at Metro; later Field Trainer Ricky Reams became plaintiff's trainer-supervisor. Beginning on the first day that Loflin worked with plaintiff, plaintiff complained of pain and bursitis that he was experiencing in his shoulders, and of pain in his hands. On plaintiff's first day of work at Metro, plaintiff complained that his pain was so severe that he could not do his work, and did not want to crawl or get on his knees. Later he told Loflin that his hand pain was so bad that could not use an implement referred to as "snips" well. The first day, all plaintiff wanted to do was "set and trim" work, and do no "roughins". Further from plaintiff's first day of work at Metro and continuing thereafter, he complained to Mr. Loflin about not being able to reach above his head. He never complained to Loflin that his work at Metro was aggravating his problems as originally described. His complaints centered more on his shoulders than on his right wrist. Mr. Loflin's testimony is credible in that he was not a principal with Metro, did not occupy a high level position with the company, had no reason to distort the truth, and his testimony was corroborated by the medical history provided by plaintiff to his doctors.
8. Plaintiff told Metro Vice President and General Manager Jake Williamson and Loflin that he had his conditions for a very long time, even prior to plaintiff's work at Metro.
9. Plaintiff's account given at the hearing in 1990 of his shoulder, hand and wrist problems is not consistent with the medical history contemporaneously given to his treating physicians during the period of his employment in 1988 with defendant and immediately thereafter. Therefore, medical opinions responding to hypothetical questions embracing facts which are not found as facts herein cannot be accepted as a basis for findings of fact or conclusions of law.
10. With regard to plaintiff's shoulder conditions, his bilateral shoulder pain and shoulder tendonitis and bursitis were not causally related to his employment at Metro. Plaintiff specifically told Dr. Horne on March 21, 1988, which was during the time when he was employed by Metro, that his bilateral shoulder pain and related symptoms were not associated with his work activities. Plaintiff also told Dr. Starkenburg that his pains were not related to his work activities, and that his work activities were not aggravating his problems. Furthermore, while working at Metro, plaintiff never indicated that any of his shoulder symptoms were in any way caused or aggravated by his work at Metro. Plaintiff did not merely fail to recognize and report on a cause-effect connection between his work activities at Metro and his shoulder symptoms. Rather, plaintiff explicitly denied that those work activities had any effect on his symptoms. Further, plaintiff's employment at Metro did not significantly contribute to or aggravate plaintiff's shoulder problems.
11. Plaintiff's shoulder conditions are among the ordinary diseases of life to which the general public is equally exposed outside of employment circumstances. Plaintiff was not at an increased risk of contracting these shoulder conditions as a result of his employment with Metro.
12. With regard to plaintiff's right wrist condition, he did not give any indication to his physicians that the wrist condition was related to or aggravated by his work activities with Metro or otherwise related to his doing air conditioning work with Metro. Although plaintiff's wrist condition was later diagnosed as mild carpal tunnel syndrome, he refused further evaluation with regard to his neck and shoulders that could possibly have determined his wrist condition not to be carpal tunnel syndrome and could have instead related his wrist condition to his shoulder condition.
13. Plaintiff's very limited employment of a few months with Metro, which was in between his work at Weathermaster, did not constitute a sufficient exposure to repetitive activity to have caused or aggravated or significantly contributed to plaintiff's carpal tunnel syndrome. In fact, plaintiff did, on occasion, specifically deny those work activities had any effect on his symptoms.
14. Although frequent use of snips is the type of repetitive motion that increases the risk of developing carpal tunnel syndrome as compared to the public generally, the evidence of record is insufficient to establish that plaintiff's amount of exposure to this activity at Metro was sufficient to have caused or contributed to plaintiff's carpal tunnel syndrome. Therefore, there is insufficient evidence to establish that plaintiff was last injuriously exposed to the hazards of carpal tunnel syndrome while employed at Metro. There is insufficient evidence to establish that his exposure to snipping activities was sufficient to accelerate or augment his condition to any extent, however slight.
15. Considering the greater weight of the medical evidence, plaintiff's prior medical and work history, plaintiff's brief work history at Metro, and plaintiff's lack of attributing his conditions to his employment at Metro, plaintiff's shoulder conditions and his carpal tunnel syndrome pre-existed his work at Metro and were not caused by, aggravated by or significantly contributed to by his work activities at Metro. Furthermore, plaintiff was not last injuriously exposed at Metro, in that his shoulder conditions and his carpal tunnel syndrome were not augmented by his limited exposure at Metro.
16. Immediately after plaintiff left his employment at Metro, plaintiff resumed heat and air-conditioning work similar to that at Metro for another employer, Weathermaster. Furthermore, immediately after his employment at Metro, plaintiff performed such heating and air conditioning work at Weathermaster for at least 2 months, through the end of July 1988. Plaintiff's post-Metro work at Weathermaster demonstrates that plaintiff did not incur a disability of his earning capacity as a consequence of his physical conditions as it was affected by his work at Metro.
* * * * * * * * * * *
Based on the foregoing findings of fact, the undersigned reaches the following additional
CONCLUSIONS OF LAW
1. Plaintiffs' limited employment with Metro was not a sufficient cause of, or contributing factor to, either of plaintiff's two conditions, his shoulder condition or his carpal tunnel syndrome. In addition, plaintiff was not last injuriously exposed at Metro to the hazards of either condition or disease, his shoulder condition or carpal tunnel syndrome, in that his exposure at Metro did not proximately augment or accelerate his conditions to any extent, however slight. N.C. Gen. Stat. §97-2(6) and § 97-57.
2. Defendant Metro is not liable to plaintiff for any occupational disease or diseases. N.C. Gen. Stat. § 97-53(13) and § 97-57.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim must be, and the same is, hereby DENIED.
2. Each side shall bear its own costs, except that defendants shall pay expert witness fees, if not yet paid, of $130.00 to Dr. Lillian R. Horne, $187.50 to Dr. Robert J. Starkenburg and $150.00 to Dr. George Brothers.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER